# Exhibit A

**RENEWAL LEASE FORM**

Owners and Tenants should read **INSTRUCTIONS TO OWNER** and **INSTRUCTIONS TO TENANT**
On reverse side before filling out or signing this form

**THIS NOTICE FOR RENEWAL OF LEASE AND RENEWAL LEASE FORM ISSUED UNDER SECTION 2523.5(A) OF THE RENT STABILIZATION CODE. ALL COPIES OF THIS FORM MUST BE SIGNED BELOW AND RETURNED TO YOUR LANDLORD WITHIN 60 DAYS.**

|  | Date: |  |
|---|---|---|
| Angela Pauli | | EDS Management Corp. |
| 1576-78 Third Avenue – Apt. 3A | | P.O. Box 1001 |
| New York, NY 10128 | | Bronx, NY 10453 |

1.  The owner hereby notifies you that your lease will expire on **11/30/2010**

**· · · · · · PART A – OFFER TO TENANT TO RENEW**

2.  You may renew this lease, for one or two years, at your option, as follows:

| Column a Renewal Term | Column b Legal Rent on Sept.30th Preceding Commencement Date of this Renewal Lease | Column c Authorized Applicable Guideline Increase (if unknown, check box and see below)*↵ | Column d Applicable Guideline Supplement, if any | Column e Lawful Rent Increase Adj. If any, effective after Sept. 30th indicated in Column b | Column f Separate charge, if any (Specify under item 4 below) | Column g New rent (if lower rent is to be charged check box and see item 5 below)*↵ |
|---|---|---|---|---|---|---|
| 1 Year | $ 1,650.52 | (2.25%) $ 37.14 | $0.00 | $0.00 | $0.00 | $ 1,687.66 |
| 2 Year | Same as above | (4.5  %) $ 74.27 | $0.00 | $0.00 | $0.00 | $ 1,724.79 |

· If applicable guideline rate is unknown at time offer is made check box in column c and enter current guideline which will be subject to adjustment when rates are ordered.

** The rent provided for in this renewal lease may be increased or decreased by order of the Division of Housing and Community Renewal (DHCR) or the Rent Guidelines Board (RGB).

3.  Security Deposit
    Current Deposit: $ 1,100      Additional Deposit Required – 1-year lease: $ 587.66
                                   Additional Deposit Required – 2-year lease: $ 624.79

4.  Specify separate charges if applicable:
    Air Conditioner – *Electricity charge: $_____/mo,      421 a(2.2%):   $_____/mo:
                                                   Other:        $_____/mo:

5.  Lower Rent to be charge, if any, $_____.      Agreement attached: Yes↵      No↵

6.  This renewal lease shall commence on __12/1/2010_____, which shall not be less than 90 days nor more than 150 days from the date of mailing or personal delivery of this Renewal Lease Form. This Renewal Lease shall
    terminate or     __11/30/2011_____ (1 year lease)      or      __11/30/2012_____ (2 year lease.)

7.  This renewal lease is based on the same terms and conditions as your expiring lease, except that _____lawful provisions attached and _____written agreements between owner and tenant have been added, (indicate in the blank spaces as applicable, the number of additional provisions or written agreements attached).

This form becomes a binding lease renewal when signed by the owner below and returned to the tenant. A rider setting forth the rights and obligations of tenants and landlords under the Rent Stabilization Law must be attached to this lease when signed by the owner and returned to the tenant.

**· · · PART B – TENANT'S RESPONSE TO OWNER**

Tenant: Check and complete where indicated one of two responses below after reading instructions on reverse side. Then date and sign your response below. You must return this Renewal Lease Form to the owner in person or by regular mail, within 60 days of the date this Notice was served upon you by the owner. Your failure to do so may be grounds for the commencement of an action by the owner to evict you from your apartment.

    ⬚  I (we) the undersigned tenant(s), agree to enter into a _____ year renewal lease at a monthly rent of $_____. This renewal lease is based on the same terms and conditions as my (our) expiring lease.

    ⬚  I (we) will not renew my (our) lease and I (we) intend to vacate the apartment on the expiration date of the present lease set forth above.

    Date: _____      Tenants' Signature(s): _____      X _____

    Date: _____      Owner's Signature: _____

RTP-8 (1/01)

## INSTRUCTIONS TO OWNER

At least two copies of this completed Renewal Lease Form must be mailed to the tenant in occupancy or personally delivered not more than 150 days and not less than 90 days prior to the end of the tenant's lease term. The owner shall also make this Form available in Spanish upon request of the tenant.

If the owner offers a renewal lease less than 90 days prior to the expiration of the existing lease, the lease term selected by the tenant shall begin at the tenant's option either (1) on the date a renewal lease would have begun had a timely offer been made or (2) on the first rent payment date occurring no less than 90 days after the date that the owner does offer the lease to the tenant. The guidelines rate applicable for such lease shall be no greater than the rate in effect on the commencement date of the lease for which a timely offer should have been made, and the increased rental shall not begin before the first rent payment date occurring no less than 90 days after such offer is made.

The owner must fully complete PART A on the reverse side of this Form explaining how the new rent has been computed. Any rent increase must not exceed the applicable Rent Guidelines Board adjustment(s) plus other adjustments authorized by the Rent Stabilization Code.

Failure to file a current registration for this housing accommodation with DHCR bars the collection of any guideline increase after such registration should have been filed. This sanction is lifted prospectively upon the filing of a proper registration.

This Renewal Lease must be offered on the same terms and conditions as the expiring lease, except for such additional provisions as are permitted by law or the Rent Stabilization Code, which must be set forth by the owner and attached to this Form. If there are any additional lawful agreements between the owner and tenant, a copy signed by both parties must also be attached to this Form.

The tenant must return to the owner all copies of this Form, completed and signed by the tenant in PART B on the reverse side of this Form.

The owner must furnish the tenant with a fully executed copy of this Renewal Lease Form bearing the tenant's and owner's signatures in PART B, and a copy of the DHCR Lease Rights Rider, within 30 days of the owner's receipt of this Form signed by the tenant. The owner shall also make the Lease Rights Rider available in Spanish upon request of the tenant. Service of this fully executed Form, upon the tenant, constitutes a binding renewal lease. If the owner fails to furnish the tenant with a fully executed copy of this Form within 30 days of receipt of the Form signed by the tenant, the tenant shall continue to have all rights afforded by the Rent Stabilization Law and Code. In addition, the owner may not collect a rent increase from the tenant, and will be barred from commencing any action or proceeding against the tenant based upon non-renewal of lease.

## INSTRUCTIONS TO TENANT
### (Read Owner's and Tenant's Instructions carefully before completing this Renewal Lease Form

If you wish to accept this offer to renew your lease, you must complete and sign this Renewal Lease Form in the space provided in PART B on the reverse side of this Form, and you must return all copies of the signed Lease Form to the owner in person or by regular mail within 60 days of the date this Form was served upon you. You may wish to make a copy for your own records. *If you are the recipient of a Senior Citizen Rent Increase Exemption, you must select a two-year lease, or you will lose this exemption.*

Before you complete and sign PART B and return this Renewal Lease Form, be sure to check the number of additional lawful provisions and written agreements indicated under item 7 on the reverse side of this Form and that the same number of lawful provisions and written agreements have been attached by the owner to this Form. Please read all attachments carefully. If such other lawful provisions appear, they are part of this lease renewal offer and renewal lease. If there are any lawful agreements between you and the owner, attached copies must be signed by both parties.

If you question the Legal Regulated Rent or the rental adjustments specified on the front of this Renewal Lease Form, ask the owner for an explanation. Or, you may telephone the NYS Division of Housing and Community Renewal ("DHCR"), Office of Rent Administration at the Central DHCR number (718) 739-6400, before the end of the 60-day period from the date this Form was served upon you.

If the owner agrees to a rent, which is lower than the legal regulated rent, this lower amount should be entered in Item 5 on the reverse side of this Form, and a signed copy of the agreement should be attached. You may not change the content of this Renewal Lease Form without the owner's written consent.

Your acceptance of this offer to renew shall constitute a renewal of the present lease for the term of years and rent accepted, subject to any other lawful changes, which appear in writing on the attachments to this Form, and subject also to payment of the new rent and additional security, if any. Such additional security shall be deposited by the owner in the manner provided for on initial occupancy.

If you do not sign and return this Renewal Lease Form at the new rent (which appears on the reverse side of this form) in accordance with the instructions, and within the prescribed 60-day period, the owner may have grounds to start proceedings to evict you from your apartment.

You may file a complaint with the DHCR, if you have not received a copy of the DHCR Lease Rights Rider with this Renewal Lease Form when signed and returned to you by the owner, or a Spanish version of this Form or the Rider after requesting it from the owner, or, if you do not receive a fully executed copy of this Renewal Lease within 30 days from the owner's receipt of a copy of this Form signed by you.

STATE OF NEW YORK / DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION/GERTZ PLAZA / 92-31 UNION HALL STREET / JAMAICA, NEW YORK 11433

**"ATTACHED RIDER SETS FORTH RIGHTS AND OBLIGATIONS OF TENANTS AND LANDLORDS UNDER THE RENT STABILIZATION LAW." ("LOS DERECHOS Y RESPONSABILIDADES DE INQUILINOS Y CASEROS ESTÁN DISPONIBLE EN ESPAÑOL").**

## STANDARD FORM OF APARTMENT LEASE
### THE REAL ESTATE BOARD OF NEW YORK, INC.
©Copyright 1988. All Rights Reserved. Reproduction in whole or in part prohibited.

**PREAMBLE:** This lease contains the agreements between You and Owner concerning Your rights and obligations and the rights and obligations of Owner. You and Owner have other rights and obligations which are set forth in government laws and regulations.

You should read this Lease and all of its attached parts carefully. If You have any questions, or if You do not understand any words or statements, get clarification. Once You and Owner sign this Lease You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease. You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made on _____ November 12, 2009 _____ between
month        day        year

Owner, _____ Sandy Realty c/o EDS Mgmt. _____

whose address is _____ 202 East 179th Street   Bronx, NY 10457 _____

and You, the Tenant, _____ Angela Helen Pauli _____

whose address is _____ 455 West 34th Street, Apt. #6D   New York, NY 10011 _____

### 1. APARTMENT AND USE
☛ Owner agrees to lease to You Apartment _____ 3A _____ on the _____ 2nd _____ floor in the Building at
_____ 1576 3rd Avenue _____ Borough of __ Manhattan __, City and State of New York.

You shall use the Apartment for living purposes only. The Apartment may be occupied by the tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law §235-f.

### 2. LENGTH OF LEASE
☛ The term (that means the length) of this Lease is __ One (1) __ years, __ Zero (0) __ months
_ 16 _ days, beginning on _ November 15, 2009 _
and ending on _ November 30, 2010 _ If you do not do everything You agree to do in this Lease, Owner may have the right to end it before the above date. If Owner does not do everything that owner agrees to do in this Lease, You may have the right to end the Lease before ending date.

### 3. RENT
☛ Your monthly rent for the Apartment is $ _ 1,100.00 (Preferential Rent) _
_ Legal Rent is $1,650.52  *See Attached Rider* _
until adjusted pursuant to Article 4 below. You must pay Owner the rent, in advance, on the first day of each month either at Owner's office or at another place that Owner may inform You of by written notice. You must pay the first month's rent to Owner when You sign this Lease if the lease begins on the first day of the month. If the Lease begins after the first day of the month, You must pay when you sign this lease (1) the part of the rent from the beginning date of this Lease until the last day of the month and (2) the full rent for the next full calendar month. If this Lease is a Renewal Lease, the rent for the first month of this Lease need not be paid until the first day of the month when the renewal term begins.

### 4. RENT ADJUSTMENTS
If this Lease is for a Rent Stabilized apartment, the rent herein shall be adjusted up or down during the Lease term, including retroactively, to conform to the Rent Guidelines. Where Owner, upon application to the State Division of Housing and Community Renewal ("authorized agency") is found to be entitled to an increase in rent or other relief, You and Owner agree: a. to be bound by such determination; b. where the authorized agency has granted an increase in rent, You shall pay such increase in the manner set forth by the authorized agency; c. except that in the event that an order is issued increasing the stabilization rent because of Owner hardship, You may, within thirty (30) days of your receipt of a copy of the order, cancel your lease on sixty (60) days written notice to Owner. During said period You may continue in occupancy at no increase in rent.

### 5. SECURITY DEPOSIT
☛ You are required to give Owner the sum of $ _ 1,100.00 _ when You sign this Lease as a security deposit, which is called in law a trust. Owner will deposit this security in _____
_____ bank at _____. If the Building contains six or more apartments, the bank account will earn interest. If You carry out all of your agreements in this Lease, at the end of each calendar year Owner or the bank will pay to Owner 1% interest on the deposit for administrative costs and to You all other interest earned on the security deposit.

If You carry out all of your agreements in this Lease and if You move out of the Apartment and return it to Owner in the same condition it was in when You first occupied it, except for ordinary wear and tear or damage caused by fire or other casualty, Owner will return to You the full amount of your security deposit and interest to which You are entitled within 60 days after this Lease ends. However, if You do not carry out all your agreements in this Lease, Owner may keep all or part of your security deposit and any interest which has not yet been paid to You necessary to pay Owner for any losses incurred, including missed payments.

If Owner sells or leases the building, Owner will turn over your security, with interest, either to You or to the person buying or leasing (lessee) the building within 5 days after the sale or lease. Owner will then notify You, by registered or certified mail, of the name and address of the person or company to whom the deposit has been turned over. In such case, Owner will have no further responsibility to You for the security deposit. The new owner or lessee will become responsible to You for the security deposit.

### 6. IF YOU ARE UNABLE TO MOVE IN
A situation could arise which might prevent Owner from letting You move into the Apartment on the beginning date set in this Lease. If this happens for reasons beyond Owner's reasonable control, Owner will not be responsible for Your damages

☛ Space to be filled in.

or expenses, and this Lease will remain in effect. However, in such case, this Lease will start on the date when You can move in, and the ending date in Article 2 will be changed to a date reflecting the full term of years set forth in Article 2. You will not have to pay rent until the move-in date Owner gives You by written notice,, or the date You move in, whichever is earlier. If Owner does not give You notice that the move-in date is within 30 days after the beginning date of the term of this Lease as stated in Article 2, You may tell Owner in writing, that Owner has 15 additional days to let You move in, or else the Lease will end. If Owner does not allow You to move in within those additional 15 days, then the Lease is ended. Any money paid by You on account of this Lease will then be refunded promptly by Owner.

**7.  CAPTIONS**

In any dispute arising under this Lease, in the event of a conflict between the text and a caption, the text controls.

**8.  WARRANTY OF HABITABILITY**

A. All of the sections of this Lease are subject to the provisions of the Warranty of Habitability Law in the form it may have from time to time during this Lease. Nothing in this Lease can be interpreted to mean that You have given up any of your rights under that law. Under that law, Owner agrees that the Apartment and the Building are fit for human habitation and that there will be no conditions which will be detrimental to life, health or safety.

B. You will do nothing to interfere or make more difficult Owner's efforts to provide You and all other occupants of the Building with the required facilities and services. Any condition caused by your misconduct or the misconduct of anyone under your direction or control shall not be a breach by Owner.

**9.  CARE OF YOUR APARTMENT-END OF LEASE-MOVING OUT**

A. You will take good care of the apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. You will move out on or before the ending date of this lease and leave the Apartment in good order and in the same condition as it was when You first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty.

B. When this Lease ends, You must remove all of your movable property. You must also remove at your own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other installation or attachment You may have installed in the Apartment, even if it was done with Owner's consent. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. You have not moved out until all persons, furniture and other property of yours is also out of the Apartment. If your property remains in the Apartment after the Lease ends, Owner may either treat You as still in occupancy and charge You for use, or may consider that You have given up the Apartment and any property remaining in the Apartment. In this event, Owner may either discard the property or store it at your expense. You agree to pay Owner for all costs and expenses incurred in removing such property. The provisions of this article will continue to be in effect after the end of this Lease.

**10.  CHANGES AND ALTERATIONS TO APARTMENT**

You cannot build in, add to, change or alter, the Apartment in any way, including wallpapering, painting, repainting, or other decorating, without getting Owner's written consent before You do anything. Without Owner's prior written consent, You cannot install or use in the Apartment any of the following: dishwasher machines, clothes washing or drying machines, electric stoves, garbage disposal units, heating, ventilating or air conditioning units or any other electrical equipment which, in Owner's reasonable opinion, will overload the existing wiring installation in the Building or interfere with the use of such electrical wiring facilities by othertenants of the Building. Also, You cannot place in the Apartment water-filled furniture.

**11.  YOUR DUTY TO OBEY ALL LAWS, REGULATIONS AND LEASE RULES**

A. Government Laws and Orders. You will obey and comply (1) with all present and future city, state and federal laws and regulations, including the Rent Stabilization Code and Law, which affect the Building or the Apartment, and (2) with all orders and regulations of Insurance Rating Organizations which affect the Apartment and the Building. You will not allow any windows in the Apartment to be cleaned from the outside, unless the equipment and safety devices required by law are used.

B. Owner's Rules Affecting You. You will obey all Owner's rules listed in this Lease and all future reasonable rules of Owner or Owner's agent. Notice of all additional rules shall be delivered to You in writing or posted in the lobby or other public place in the building, Owner shall not be responsible to You for not enforcing any rules, regulations or provisions of another tenant's lease except to the extent required by law.

C. Your Responsibility. You are responsible for the behavior of yourself, of your immediate family, your servants and people who are visiting You. You will reimburse Owner as additional rent upon demand for the cost of all losses, damages, fines and reasonable legal expenses incurred by Owner because You, members of your immediate family, servants or people visiting You have not obeyed government laws and orders or the agreements or rules of this Lease.

**12.  OBJECTIONABLE CONDUCT**

As a tenant in the Building, You will not engage in objectionable conduct. Objectionable conduct means behavior which makes or will make the Apartment or the Building less fit to live in for You or other occupants. It also means anything which interferes with the right of others to properly and peacefully enjoy their Apartments, or causes conditions that are dangerous, hazardous, unsanitary and detrimental to other tenants in the Building. Objectionable conduct by You gives Owner the right to end this Lease.

**13.  SERVICES AND FACILITIES**

A. Required Services. Owner will provide cold and hot water and heat as required by law, repairs to the Apartment, as required by law, elevator service if the Building has elevator equipment, and the utilities, if any, included in the rent, as set forth in sub-paragraph B. You are not entitled to any rent reduction because of a stoppage or reduction of any of the above services unless it is provided by law.

☞ B. The following utilities are included in the rent.

C. Electricity and Other Utilities. If Owner provides electricity or gas and the charge is included in the rent on ☞ Page 1, or if You buy electricity or gas from Owner for a separate (submetered) charge, your obligations are described in the Rider attached to this Lease. If electricity or gas is not included in the rent or is not charged separately by Owner, You must arrange for this service directly with the utility company. You must also pay directly for telephone service if it is not included in the rent.

D. Appliances. Appliances supplied by Owner in the Apartment are for your use. They will be maintained and repaired or replaced by Owner, but if repairs or replacement are made necessary because of your negligence or misuse, You will pay Owner for the cost of such repair or replacement as additional rent.

E. Elevator Service. If the elevator is the kind that requires an employee of Owner to operate it, Owner may end this service without reducing the rent if: (1) Owner gives You 10 days notice that this service will end; and (2) within a reasonable time after the end of this 10-day notice, Owner begins to substitute an automatic control type of elevator and proceeds diligently with its installation.

F. Storeroom Use. If Owner permits You to use any storeroom,laundry or any other facility located in the building but outside of the Apartment, the use of this storeroom or facility will be furnished to You free of charge and at your own risk, except for loss suffered by You due to Owner's negligence. You will operate at your expense any coin operated appliances located in such storerooms or laundries.

**14.  INABILITY TO PROVIDE SERVICES**

Because of a strike, labor, trouble, national emergency, repairs, or any other cause beyond Owner's reasonable control, Owner may not be able to provide or may be delayed in providing any services or in making any repairs to the Building.

In any of these events, any rights You may have against Owner are only those rights which are allowed by laws in effect when the reduction in service occurs.

**15.   ENTRY TO APARTMENT**

During reasonable hours and with reasonable notice, except in emergencies, Owner may enter the Apartment for the following reasons:

(A) To erect, use and maintain pipes and conduits in and through the walls and ceilings of the Apartment; to inspect the Apartment and to make any necessary repairs or changes Owner decides are necessary. Your rent will not be reduced because of any of this work, unless required by Law.

(B) To show the Apartment to persons who may wish to become owners or lessees of the entire Building or may be interested in lending money to Owner;

(C) For four months before the end of the Lease, to show the Apartment to persons who wish to rent it;

(D)If during the last month of the Lease You have moved out and removed all or almost all of your property from the Apartment, Owner may enter to make changes, repairs, or redecorations. Your rent will not be reduced for that month and this Lease will not be ended by Owner's entry.

(E) If at any time You are not personally present to permit Owner or Owner's representative to enter the Apartment and entry is necessary or allowed by law or under this lease, Owner or Owner's representatives may nevertheless enter the Apartment. Owner may enter by force in an emergency. Owner will not be responsible to You, unless during this entry, Owner or Owner's representative is negligent or misuses your property.

**16.   ASSIGNING; SUBLETTING; ABANDONMENT**

(a) **Assigning and Subletting.** You cannot assign this Lease or sublet the Apartment without Owner's advance written consent in each instance to a request made by You in the manner required by Real Property Law §226-b. and in accordance with the provisions of the Rent Stabilization Code and Law, relating to subletting. Owner may refuse to consent to a lease assignment for any reason or no reason, but if Owner unreasonably refuses to consent to request for a lease assignment properly made, at your request in writing, Owner will end this Lease effective as of thirty days after your request. The first and every other time you wish to sublet the Apartment, You must get the written consent of Owner unless Owner unreasonably withholds consent following your request to sublet in the manner provided by Real Property Law §226.b. Owner may impose a reasonable credit check fee on You in connection with an application to assign or sublet. If You fail to pay your rent Owner may collect rent from subtenant or occupant without releasing You from the Lease. Owner will credit the amount collected against the rent due from You. However, Owner's acceptance of such rent does not change the status of the subtenant or occupant to that of direct tenant of Owner and does not release You from this Lease.

(b) Abandonment. If You move out of the Apartment (abandonment) before the end of this Lease without the consent of Owner, this Lease will not be ended (except as provided by law following Owner's unreasonable refusal to consent to an assignment or subletting requested by You.) You will remain responsible for each monthly payment of rent as it becomes due until the end of this Lease. In case of abandonment, your responsibility for rent will end only if Owner chooses to end this Lease for default as provided in Article 17.

**17.   DEFAULT**

(1) You default under the Lease if You act in any of the following ways:

(a) You fail to carry out any agreement or provision of this Lease

(b) You or another occupant of the Apartment behaves in an objectionable manner;

(c) You do not take possession or move into the Apartment 15 days after the beginning of this Lease;

(d) You and other legal occupants of the Apartment move out permanently before this Lease ends;

If You do default in any one of these ways, other than a default in the agreement to pay rent, Owner may serve You with a written notice to stop or correct the specified default within 10 days. You must then either stop or correct the default within 10 days, or, if You need more than 10 days, You must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible.

(2) If You do not stop or begin to correct a default within 10 days, Owner may give You a second written notice that this Lease will end six days after the date the second written notice is sent to You, At the end of the 6-day period, this Lease will end, You then must move out of the Apartment. Even though this Lease ends, You will remain liable to Owner for unpaid rent up to the end of this Lease,the value of your occupancy, if any, after the Lease ends, and damages caused to Owner after that time as stated in Article 18.

(3) If You do not pay your rent when this Lease requires after a personal demand for rent has been made, or within three days after a statutory written demand for rent has been made, or if this Lease ends, Owner may do the following: (a) enter the apartment and retake possession of it if You have moved out; or (b) go to court and ask that You and all other occupants in the Apartment be compelled to move out.

Once this Lease has been ended, whether because of default or otherwise, You give up any right You might otherwise have to reinstate or renew the Lease.

**18.   REMEDIES OF OWNER AND YOUR LIABILITY**

If this Lease is ended by Owner because of your default,the following are the rights and obligations of You and Owner.

(a) You must pay your rent until this Lease has ended. Thereafter, You must pay an equal amount for what the law calls "use and occupancy" until You actually move out.

(b) Once You are out, Owner may re-rent the Apartment or any portion of it for a period of time which may end before or after the ending date of this Lease. Owner may re-rent to a new tenant at a lesser rent or may charge a higher rent than the rent in this Lease.

(c) Whether the Apartment is re-rented or not, You must pay to Owner as damages:

(1) the difference between the rent in this Lease and the amount, if any, of the rents collected in any later lease or leases of the Apartment for what would have been the remaining period of this Lease; and

(2) Owner's expenses for advertisements, broker's fees and the cost of putting the Apartment in good condition for re-rental; and

••• (3) Owner's expenses for attorney's fees.

(d) You shall pay all damages due in monthly installments on the rent day established in this Lease. Any legal action brought to collect one or more monthly installments of damages shall not prejudice in any way Onwer's right to collect the damages for a later month by a similar action. If the rent collected by Owner from a subsequent tenant of the Apartment is more than the unpaid rent and damages which You owe Owner, You cannot receive the difference. Owner's failure to re-rent to another tenant will not release or change your liability for damages, unless the failure is due to Owner's deliberate inaction.

**19.   ADDITIONAL OWNER REMEDIES**

If You do not do everything You have agreed to do, or if You do anything which shows that You intend not to do what You have agreed to do, Owner has the right to ask a Court to make You carry out your agreement or to give the Owner such other relief as the Court can provide. This is in addition to the remedies in Article 17 and 18 of this lease.

**20.   FEES AND EXPENSES**

A. **Owner's Right.** You must reimburse Owner for any of the following fees and expenses incurred by Owner:

(1) Making any repairs to the Apartment or the Building which result from misuse or negligence by You or persons who live with You, visit You, or work for You;

••• This may be deleted.

(2) Repairing or replacing any appliance damaged by Your misuse, or negligence.

(3) Correcting any violations of city, state or federal laws or orders and regulations of insurance rating organizations concerning the Apartment or the Building which You or persons who live with You, visit You, or work for You have caused;

(4) Preparing the Apartment for the next tenant if You move out of your Apartment before the Lease ending date;

\*\*\* (5) Any legal fees and disbursements for legal actions or proceedings brought by Owner against You because of a Lease default by You or for defending lawsuits brought against Owner because of your actions;

(6) Removing all of your property after this Lease is ended;

(7) All other fees and expenses incurred by Owner because of your failure to obey any other provisions and agreements of this Lease;

These fees and expenses shall be paid by You to Owner as additional rent within 30 days after You receive Owner's bill or statement. If this Lease has ended when these fees and expenses are incurred, You will still be liable to Owner for the same amount as damages.

B. **Tenant's Right.** Owner agrees that unless sub-paragraph 5 of this Article 20 has been stricken out of this Lease You have the right to collect reasonable legal fees and expenses incurred in a successful defense by You of a lawsuit brought by Owner against You or brought by You against Owner to the extent provided by Real Property Law, section 234.

**21.   PROPERTY LOSS, DAMAGES OR INCONVENIENCE**

Unless caused by the negligence or misconduct of Owner or Owner's agents or employees, Owner or Owner's agents and employees are not responsible to You for any of the following: (1) any loss of or damage to You or your property in the Apartment or the Building due to any accidental or intentional cause, even a theft or another crime committed in the Apartment or elsewhere in the Building; (2) any loss of or damage to your property delivered to any employee of the Building (i.e., doorman, superintendent, etc.); or (3) any damage or inconvenience caused to You by actions, negligence or violations of a Lease by any other tenant or person in the Building except to the extent required by law.

Owner will not be liable for any temporary interference with light, ventilation, or view caused by construction by or in behalf of Owner. Owner will not be liable for any such interference on a permanent basis caused by construction on any parcel of land not owned by Owner. Also, Owner will not be liable to You for such interference caused by the permanent closing, darkening or blocking up of windows, if such action is required by law. None of the foregoing events will cause a suspension or reduction of the rent or allow You to cancel the Lease.

**22.   FIRE OR CASUALTY**

A. If the Apartment becomes unusable, in part or totally, because of fire, accident or other casualty, this Lease will continue unless ended by Owner under C below or by You under D below. But the rent will be reduced immediately. This reduction will be based upon the part of the Apartment which is unusable.

B. Owner will repair and restore the Apartment, unless Owner decides to take actions described in paragraph C below.

C. After a fire, accident or other casualty in the Building, Owner may decide to tear down the Building or to substantially rebuild it. In such case, Owner need not restore the Apartment but may end this Lease. Owner may do this even if the Apartment has not been damaged, by giving You written notice of this decision within 30 days after the date when the damage occurred. If the Apartment is usable when Owner gives You such notice, this Lease will end 60 days from the last day of the calendar month in which You were given the notice.

D. If the Apartment is completely unusable because of fire, accident or other casualty and it is not repaired in 30 days, You may give Owner written notice that You end the Lease. If You give that notice, this Lease is considered ended on the day that the fire, accident or casualty occurred. Owner will refund your security deposit and the pro-rata portion of rents paid for the month in which the casualty happened.

E. Unless prohibited by the applicable insurance policies, to the extent that such insurance is collected, You and Owner release and waive all right of recovery against the other or anyone claiming through or under each by way of subrogation.

**23.   PUBLIC TAKING**

The entire building or a part of it can be acquired (condemned) by any government or government agency for a public or quasi-public use or purpose. If this happens, this Lease shall end on the date the government or agency take title. You shall have no claim against Owner for any damage resulting; You also agree that by signing this Lease, You assign to Owner any claim against the Government or Government agency for the value of the unexpired portion of this Lease.

**24.   SUBORDINATION CERTIFICATE AND ACKNOWLEDGEMENTS**

All leases and mortgages of the Building or of the land on which the Building is located, now in effect or made after this Lease is signed, come ahead of this Lease. In other words, this Lease is "subject and subordinate to" any existing or future lease or mortgage on the Building or land, including any renewals, consolidations, modifications and replacements of these leases or mortgages. If certain provisions of any of these leases or mortgages come into effect, the holder of such lease or mortgage can end this Lease. If this happens, You agree that You have no claim against Owner or such lease or mortgage holder. If Owner requests, You will sign promptly an acknowledgement of the "subordination" in the form that Owner requires.

You also agree to sign (if accurate) a written acknowledgement to any third party designated by Owner that this Lease is in effect, that Owner is performing Owner's obligations under this Lease and that you have no present claim against Owner.

**25.   TENANT'S RIGHT TO LIVE IN AND USE THE APARTMENT**

If You pay the rent and any required additional rent on time and You do everything You have agreed to do in this Lease, your tenancy cannot be cut off before the ending date, except as provided for in Articles 22, 23, and 24.

**26.   BILLS AND NOTICE**

A. Notices to You. Any notice from Owner or Owner's agent or attorney will be considered properly given to You if it (1) is in writing; (2) is signed by or in the name of Owner or Owner's agent; and (3) is addressed to You at the Apartment and delivered to You personally or sent by registered or certified mail to You at the Apartment. The date of service of any written notice by Owner to you under this agreement is the date of delivery or mailing of such notice.

B. Notices to Owner. If You wish to give a notice to Owner, You must write it and deliver it or send it by registered or certified mail to Owner at the address noted on page 1 of this Lease or at another address of which Owner or Agent has given You written notice.

**27.   GIVING UP RIGHT TO TRIAL BY JURY AND COUNTERCLAIM**

A. Both You and Owner agree to give up the right to a trial by jury in a court action, proceeding or counter claim on any matters concerning this Lease, the relationship of You and Owner as Tenant and Landlord or your use or occupancy of the Apartment. This agreement to give up the right to a jury trial does not include claims for personal injury or property damage.

B. If Owner begins any court action or proceeding against You which asks that You be compelled to move out, You cannot make a counterclaim unless You are claiming that Owner has not done what Owner is supposed to do about the condition of the Apartment or the Building.

\*\*\* This may be deleted.

## 28. NO WAIVER OF LEASE PROVISIONS

A. Even if Owner accepts your rent or fails once or more often to take action against You when You have not done what You have agreed to do in this Lease, the failure of Owner to take action or Owner's acceptance of rent does not prevent Owner from taking action at a later date if You again do not do what You have agreed to do.

B. Only a written agreement between You and Owner can waive any violation of this Lease.

C. If You pay and Owner accepts an amount less than all the rent due, the amount received shall be considered to be in payment of all or a part of the earliest rent due. It will not be considered an agreement by Owner to accept this lesser amount in full satisfaction of all of the rent due.

D. Any agreement to end this Lease and also to end the rights and obligations of You and Owner must be in writing, signed by You and Owner or Owner's agent. Even if You give keys to the Apartment and they are accepted by any employee, or agent, or Owner, this Lease is not ended.

## 29. CONDITION OF THE APARTMENT

When You signed this Lease, You did not rely on anything said by Owner, Owner's agent or superintendent about the physical condition of the Apartment, the Building or the land on which it is built. You did not rely on any promises as to what would be done, unless what was said or promised is written in this Lease and signed by both You and Owner or found in Owner's floor plans or brochure shown to You before You signed the Lease. Before signing this Lease, You have inspected the apartment and You accept it in its present condition "as is," except for any condition which You could not reasonably have seen during your inspection. You agree that Owner has not promised to do any work in the Apartment except as specified in attached "Work" rider.

## 30. RENT INCREASE FOR MAJOR CAPITAL IMPROVEMENT

☞ Owner advises you that an application for increase in stabilized rent on the ground of a building-wide major capital improvement dated _____ Docket No. _____ is now pending before the State Division of Housing and Community Renewal (Agency). Such application involves the following major capital improvements which are now completed or in progress:

You agree that the stabilized rent herein may be increased during the term of this lease by reason of such improvement as of a date and in the amount permitted by an order from the Agency.

## 31. DEFINITIONS

A. Owner: The term "Owner" means the person or organization receiving or entitled to receive rent from You for the Apartment at any particular time other than a rent collector or managing agent of Owner. "Owner" includes the owner of the land or Building, a lessor, or sublessor of the land or Building and a mortgagee in possession. It does not include a former owner, even if the former owner signed this Lease.

B. You: The Term "You" means the person or persons signing this Lease as Tenant and the successors and assigns of the signer. This Lease has established a tenant-landlord relationship between You and Owner.

## 32. SUCCESSOR INTERESTS

The agreements in this Lease shall be binding on Owner and You and on those who succeed to the interest of Owner or You by law, by approved assignment or by transfer.

**Owners Rules - a part of this lease - see page 6**

TO CONFIRM OUR AGREEMENTS, OWNER AND YOU RESPECTIVELY SIGN THIS LEASE AS OF THE DAY AND YEAR FIRST WRITTEN ON PAGE 1.

Witnesses

_____    Owner's Signature   [L.S.]

_____    Tenant's Signature  [L.S.]

_____    Tenant's Signature  [L.S.]

## GUARANTY

The undersigned Guarantor guarantees to Owner the strict performance of and observance by Tenant of all the agreements, provisions and rules in the attached Lease. Guarantor agrees to waive all notices when Tenant is not paying rent or not observing and complying with all of the provisions of the attached Lease. Guarantor agrees to be equally liable with Tenant so that Owner may sue Guarantor directly without first suing Tenant. The Guarantor further agrees that his guaranty shall remain in full effect even if the Lease is renewed, changed or extended in any way and even if Owner has to make a claim against Guarantor. Owner and Guarantor agree to waive trial by jury in any action, proceeding or counterclaim brought against the other on any matters concerning the attached Lease or the Guaranty.

Dated, New York City   × 11/12/09

_____    Witness

_____    Guarantor

_____    Address

☞ To be filled in if applicable

Page 6

Apartment

Premises

Tenant

Expires




## STANDARD FORM OF APARTMENT
# Lease

### The Real Estate Board of New York, Inc.

Copyright 1988. All rights Reserved. Reproduction in whole or in part prohibited.

## ATTACHED RULES WHICH ARE A PART OF THE LEASE
## AS PROVIDED BY ARTICLE 11

**Public Access Ways**
1.  (a) Tenants shall not block or leave anything in or on fire escapes, the sidewalks, entrances, driveways, elevators, stairways, or halls. Public access ways shall be used only for entering and leaving the Apartment and the Building. Only those elevators and passageways designated by Owner can be used for deliveries.
 (b) Baby carriages, bicycles or other property of Tenants shall not be allowed to stand in the halls, passageways, public areas or courts of the Building.

**Bathroom and Plumbing Fixtures**
2.  The bathrooms, toilets and wash closets and plumbing fixtures shall only be used for the purposes for which they were designed or built; sweepings, rubbish bags, acids or other substances shall not be placed in them.

**Refuse**
3.  Carpets, rugs or other articles shall not be hung or shaken out of any window of the Building. Tenants shall not sweep or throw or permit to be swept or thrown any dirt, garbage or other substances out of the windows or into any of the halls, elevators or elevator shafts. Tenants shall not place any articles outside of the Apartment or outside of the building except in safe containers and only at places chosen by Owner.

**Elevators**
4.  All non-automatic passenger and service elevators shall be operated only by employees of Owner and must not in any event be interfered with by Tenants. The service elevators, if any, shall be used by servants, messengers and trades people for entering and leaving, and the passenger elevators, if any, shall not be used by them for any purpose. Nurses with children, however, may use the passenger elevators.

**Laundry**
5.  Laundry and drying apparatus, if any, shall be used by Tenants in the manner and at the times that the superintendent or other representative of Owner may direct. Tenants shall not dry or air clothes on the roof

**Keys and Locks**
6.  Owner may retain a pass key to the apartment. Tenants may install on the entrance of the Apartment an additional lock of not more than three inches in circumference. Tenants may also install a lock on any window but only in the manner provided by law. Immediately upon making any installation of either type, Tenants shall notify Owner or Owner's agent and shall give Owner or Owner's agent a duplicate key. If changes are made to the locks or mechanism installed by Tenants, Tenants must deliver keys to Owner. At the end of this Lease, Tenants must return to Owner all keys either furnished or otherwise obtained. If Tenants lose or fail to return any keys which were furnished to them, Tenants shall pay to Owner the cost of replacing them.

**Noise**
7.  Tenants, their families, guests, employees, or visitors shall not make or permit any disturbing noises in the Apartment or Building or permit anything to be done that will interfere with the rights, comforts or convenience of other tenants. Also, Tenants shall not play a musical instrument or operate or allow to be operated a phonograph, radio or television set so as to disturb or annoy any other occupant of the Building.

**No Projections**
8.  An aerial may not be erected on the roof or outside wall of the Building without the written consent of Owner. Also, awnings or other projections shall not be attached to the outside walls of the Building or to any balcony or terrace.

**No Pets**
9.  Dogs or animals of any kind shall not be kept or harbored in the Apartment, unless in each instance it be expressly permitted in writing by Owner. This consent, if given, can be taken back by Owner at any time for good cause on reasonably given notice. Unless carried or on a leash, a dog shall not be permitted on any passenger elevator or in any public portion of the building. Also, dogs are not permitted on any grass or garden plot under any condition. BECAUSE OF THE HEALTH HAZARD AND POSSIBLE DISTURBANCE OF OTHER TENANTS WHICH ARISE FROM THE UNCONTROLLED PRESENCE OF ANIMALS, ESPECIALLY DOGS, IN THE BUILDING, THE STRICT ADHERENCE TO THE PROVISIONS OF THIS RULE BY EACH TENANT IS A MATERIAL REQUIREMENT OF EACH LEASE. TENANTS' FAILURE TO OBEY THIS RULE SHALL BE CONSIDERED A SERIOUS VIOLATION OF AN IMPORTANT OBLIGATION BY TENANT UNDER THIS LEASE. OWNER MAY ELECT TO END THIS LEASE BASED UPON THIS VIOLATION.

**Moving**
10.  Tenants can use the elevator to move furniture and possessions only on designated days and hours. Owner shall not be liable for any costs, expenses or damages incurred by Tenants in moving because of delays caused by the unavailability of the elevator.

**Floors**
11.  Apartment floors shall be covered with rugs or carpeting to the extent of at least 80% of the floor area of each room excepting only kitchens, pantries, bathrooms and hallways. The tacking strip for wall-to-wall carpeting will be glued, not nailed to the floor.

**Window Guards**
12.  IT IS A VIOLATION OF LAW TO REFUSE, INTERFERE WITH INSTALLATION, OR REMOVE WINDOW GUARDS WHERE REQUIRED. (SEE ATTACHED WINDOW GUARD RIDER)

Use with Real Estate Board Apartment —Lease New or Renewal
REB A1469A

State of New York
Division of Housing and Community Renewal
Office of Rent Administration
Gertz Plaza
92-31 Union Hall Street
Jamaica, New York 11433
Web Site: www.dhcr.state.ny.us
Email address: dhcrinfo@dhcr.state.ny.us

**Revision Date: February 2006**

**Rent Stabilization Lease Rider For Apartment House Tenants
Residing In New York City**

**FAILURE BY AN OWNER TO ATTACH A COPY OF THIS RIDER TO THE TENANT'S
LEASE WITHOUT CAUSE MAY RESULT IN A FINE OR OTHER SANCTIONS**

**NOTICE**

This Rider, with this Notice, must be attached to all vacancy and renewal leases for rent stabilized apartments. This Rider was prepared pursuant to Section 26-511(d) of the New York City Rent Stabilization Law.

This Rider must be in a print size larger than the print size of the lease to which the Rider is attached. The *following language must appear in bold print upon the face of each lease* : *"**ATTACHED RIDER SETS FORTH RIGHTS AND OBLIGATIONS OF TENANTS AND LANDLORDS UNDER THE RENT STABILIZA-TION LAW.**" ("Los Derechos Y Responsabilidades de Inquilinos Y Caseros Están Disponible en Español".)*

**INTRODUCTION:**

This Rider is issued by the *New York State Division of Housing and Community Renewal* ("DHCR"), pursuant to the Rent Stabilization Law ("RSL"), and Rent Stabilization Code ("Code"). It generally informs tenants and owners about their basic rights and responsibilities under the RSL.

This Rider does not contain every rule applicable to rent stabilized apartments. It is only informational and its provisions are not part of and do not modify the lease. However, it must be attached as an addendum to the lease. It does not replace or modify the RSL, the Code, any order of DHCR, or any order of the New York City Rent Guidelines Board.

The Appendix lists organizations which can provide assistance to tenants and owners who have inquiries, complaints or requests relating to subjects covered in this Rider.

Tenants should keep a copy of this Rider and of any lease they sign.

```
┌─────────────────────────────────────────────────────────────────────┐
│                            PROVISIONS                                 │
└─────────────────────────────────────────────────────────────────────┘
```

**1.    GUIDELINES INCREASES FOR RENEWAL LEASES:**

The owner is entitled to increase the rent when a tenant renews a lease ( a "renewal lease"). Each year, effective October 1, the New York City Rent Guidelines Board sets the percentage of maximum permissible increase over the immediately preceding September 30th rent for leases which will begin during the year for which the guidelines order is in effect. The date a lease starts determines which guidelines order applies.

Guidelines orders provide increases for Renewal Leases. The renewing tenant has the choice of the length of the lease. Different percentages are set for rent increases for leases of 1 or 2 years. The guidelines order may incorporate additional provisions, such as a supplementary low-rent adjustment. For additional information see DHCR Fact Sheet #26.

**2.    VACANCY INCREASES FOR VACANCY LEASES**

The owner is entitled to increase the prior legal regulated rent when a new tenant enters into a lease ("vacancy lease"). The legal regulated rent immediately preceding the vacancy may be increased by statutory vacancy increases as follows:

If the vacancy lease is for a term of 2 years, 20% of the prior legal regulated rent; or if the vacancy lease is for a term of 1 year, the increase shall be 20% of the prior legal regulated rent less an amount equal to the difference between:

a) The 2 year renewal lease guideline promulgated by the New York City Rent Guidelines Board ("RGB") applied to the prior legal regulated rent and

b) The 1 year renewal lease guideline promulgated by the RGB applied to the prior legal regulated rent.

Additional increases are available to owners where the legal regulated rent was last increased by a vacancy allowance eight or more years prior to the entering into of the subject vacancy lease or if no vacancy allowance has been taken, the number of years that the apartment has been subject to stabilization. Generally, this increase equals 0.6%, multiplied by the prior legal regulated rent, multiplied by the number of years since the last vacancy increase.

If the prior legal regulated rent was less than $300, the total vacancy increase shall be as calculated above, **plus** an additional $100. If the prior legal regulated was at least $300, and no more than $500, in no event shall the total vacancy increase be less than $100.

A RGB order may authorize an additional vacancy "allowance," which is separate from the statutory vacancy increase which an owner may charge. The tenant has the choice of whether the vacancy lease will be for a term of 1 or 2 years. For additional information see DHCR Fact Sheets #4 and 26.

## 3.    SECURITY DEPOSITS

An owner may collect a security deposit no greater than one month's rent. However, if the present tenant moved into the apartment prior to the date the apartment first became rent stabilized, and the owner collected more than one month's rent as security, the owner may continue to retain a security deposit of up to two month's rent for that tenant only. When the rent is increased, the owner may charge an additional amount to bring the security deposit up to the full amount of the increased rent to which the owner is entitled.

A security deposit must be deposited in an interest bearing trust account in a banking organization in New York State. The tenant has the option of applying the interest to the rent, leaving the interest in the bank or receiving the interest annually. For additional information see DHCR Fact Sheet #9.

## 4.    OTHER RENT INCREASES:

In addition to guidelines and statutory vacancy increases, the rent may be permanently increased based upon the following:

(A) **New Services, New Equipment, Or Improvements Other Than Repairs - Individual Apartments** - If a new service or new equipment is added or an improvement is made, 1/40th of the cost of the new service, equipment or improvement may be added to the rent. If a new service or new equipment is added or an improvement made while the tenant is in occupancy, the owner must obtain the tenant's written consent to the increase. If a new service or new equipment is provided or an improvement made while the apartment is vacant, consent of the next tenant is not required, but such tenant may challenge the increase if it does not reflect the actual cost of the new service, new equipment or improvement. For additional information see DHCR Fact Sheet #12.

(B) **Major Capital Improvements ("MCI")** - An owner is permitted a rental increase for building-wide major capital improvements, such as the replacement of a boiler, or new plumbing. The owner must receive approval from DHCR which will permit the owner to increase rents pro-rata by 1/84th of the cost of the improvement. The owner is not required to obtain tenant consent. Tenants are served with a notice of the owner's application and have a right to challenge the MCI application on certain grounds. For additional information see DHCR Fact Sheet #11.

(C) **Hardship** - An owner may apply to increase the rents of all rent stabilized apartments based on hardship when:
1.   the rents are not sufficient to enable the owner to maintain approximately the same average annual net income for a current three-year period as compared with the annual net income which prevailed on the average over the period 1968 through 1970, or for the first three years of operation if the building was completed since 1968, or for the first three years the owner owned the building if the owner cannot obtain records for the years 1968-1970; or
2.   where the annual gross rental income does not exceed the annual operating expenses by a sum equal to at least 5% of such gross income.

If an application for a rent increase based on a major capital improvement or hardship is granted, the owner may charge the increase during the term of an existing lease only if the lease contains a clause specifically authorizing the owner to do so.

An increase based on a major capital improvement or hardship may not exceed 6% in any 12 month period. Any increase authorized by DHCR which exceeds these annual limitations may be collected in future years.

## 5.    FOR VACANCY LEASES ONLY:

If this Rider is attached to a **RENEWAL LEASE**, the owner is **NOT** obligated to complete this section.

If this Rider is attached to a **VACANCY LEASE**, the owner **MUST** show how the rental amount provided for in such vacancy lease has been computed above the prior legal regulated rent by completing the following chart. The owner is not entitled to a rent which is more than the legal regulated rent. For additional information see DHCR Fact Sheet #5.

ANY INCREASE ABOVE THE PRIOR LEGAL REGULATED RENT MUST BE IN ACCORDANCE WITH ADJUSTMENTS PERMITTED BY THE RENT GUIDELINES BOARD AND THE RENT STABILIZATION

*AP*

## Status of Apartment and Last Tenant
### (Owner to Check Appropriate Box - (A), (B), (C), or (D).)

☐ (A)  This apartment was rent stabilized when the last tenant moved out.

1501.68
~~1500.52~~

Last Legal Regulated Rent

1.  Statutory Vacancy Increase

    (i)  Increase based on (1 year) (2 year) lease (circle one)    (_____%)   $_____

    (ii)  Increase based on length of time (8 years or more)
        since last vacancy allowance or if no vacancy allowance
        has been taken, the number of years that the apartment
        has been subject to stabilization.     (0.6% x number of years)   $_____

    (iii)  Increase based on low rental amount.  If applicable
        complete (a) or (b), but not both.

        (a)  Prior legal regulated rent was less than $300 -          $_____
              additional $100 increase, enter 100

        (b)  If the prior legal regulated rent was $300 or more
              but less than $500             (1)   $100
              the sum of (i) and (ii)        (2) _____
              (1) minus (2).  If less than zero, enter zero   (3) _____

                             Amount from line(3)   $_____

Vacancy Allowance, if permitted by NYC Rent Guidelines Board   (*16*%)   $ *14884*

Guidelines Supplementary Adjustment, if permitted by NYC Rent
Guidelines Board                                          $_____

New Equipment, Service, Improvement
for this apartment                                               $_____

New Legal Regulated Rent                                 $_____

Separate Charges or Credits:                              $_____

Surcharge (e.g., 421-a)                                   $_____

Ancillary Service (e.g., garage)                            $_____

Other (specify _____)   $_____

*New Tenant's Rent                                   $ *1650.52*

*If the "New Tenant's Rent" is a "preferential rent", upon renewal the owner may collect the "New
Legal Regulated Rent" listed above plus all subsequent lawfull adjustments.
or

☐ (B)  This apartment was Rent Controlled at the time the last tenant moved out. This tenant is the first rent
stabilized tenant and the rent agreed to and stated in the lease to which this Rider is attached is $_____.
The owner is entitled to charge a market rent to the first rent stabilized tenant. The first rent charged to
the first rent stabilized tenant becomes the initial legal regulated rent for the apartment under the rent
stabilization system. However, if the tenant has reason to believe that this rent exceeds a "fair market rent",
the tenant may file a "Fair Market Rent Appeal" with DHCR. The owner is required to give the tenant notice,
on DHCR Form RR-1, of the right to file such an appeal. The notice must be served by certified mail. A

(ii) Increase based on length of time (6 years or more) since last vacancy allowance or if no vacancy allowance has been taken, the number of years that the apartment has been subject to stabilization.        (0.6% x number of years)     $_____

(iii) Increase based on low rental amount. If applicable complete (a) or (b), but not both.

    (a)  Prior legal regulated rent was less than $300 -                              $_____
        additional $100 increase, enter 100

    (b)  If the prior legal regulated rent was $300 or more
        but less than $500                                    (1)  $100
        the sum of (i) and (ii)                              (2)  _____
        (1) minus (2).  If less than zero, enter zero        (3)  _____

                                      Amount from line(3)     $_____

Vacancy Allowance, if permitted by NYC Rent Guidelines Board      ( _16_ %)   $ _148.84_

Guidelines Supplementary Adjustment, if permitted by NYC Rent
Guidelines Board                                                              $_____

New Equipment, Service, Improvement
for this apartment                                                           $_____

New Legal Regulated Rent                                                     $_____

Separate Charges or Credits:                                                 $_____

Surcharge (e.g., 421-a)                                                      $_____

Ancillary Service (e.g., garage)                                            $_____

Other (specify _____)                                    $_____

*New Tenant's Rent                                                          $ _1650.52_

*If the "New Tenant's Rent" is a "preferential rent", upon renewal the owner may collect the "New
Legal Regulated Rent" listed above plus all subsequent lawfull adjustments.

                                         or

☐  (B)  This apartment was Rent Controlled at the time the last tenant moved out. This tenant is the first rent
stabilized tenant and the rent agreed to and stated in the lease to which this Rider is attached is $_____.
The owner is entitled to charge a market rent to the first rent stabilized tenant. The first rent charged to
the first rent stabilized tenant becomes the initial legal regulated rent for the apartment under the rent
stabilization system. However, if the tenant has reason to believe that this rent exceeds a "fair market rent",
the tenant may file a "Fair Market Rent Appeal" with DHCR. The owner is required to give the tenant notice,
on DHCR Form RR-1, of the right to file such an appeal. The notice must be served by certified mail. A
tenant only has 90 days, after such notice was mailed to the tenant by the owner by certified mail, to file an
appeal. Otherwise, the rent set forth on the registration form becomes the initial legal regulated rent.

☐  (C)  The rent for this apartment is an Initial or Restructured Rent pursuant to a Government Program.
    (Specify Program_____)                        $_____.

                                        - or -

☐  (D)  Other_____        $_____.
    (Specify - for example, a market or "first" rent after renovation to an individual apartment where the outer
    dimensions of the apartment have been substantially altered.)



6.   **RENT REGISTRATION:**

(A)  **Initial**
An owner must register an apartment's rent and services with DHCR within 90 days from when the apartment first becomes subject to the RSL. To complete the rent registration process, the owner must serve the tenant's copy of the registration statement upon the tenant. The tenant may challenge the correctness of the rental as stated in the registration statement within 90 days of the certified mailing to the tenant of the tenant's copy of the registration statement.

(B)  **Annual**
The annual update to the initial registration must be filed with DHCR by July 31st with information as of April 1st of each year. At the time of such filing, the owner must provide each tenant with the tenant's copy. The rental amount registered annually is challengable by the filing with DHCR of a *"Tenant's Complaint of Rent Overcharge and/or Excess Security Deposit"* (DHCR Form RA-89), for a period of 4 years prior to the filing of the complaint. The rental history prior to this 4 year period will not be examined. Rent charged and paid on the date at the beginning of this 4 year period is the "base date rent."

(C)  **Penalties**
Failure to register shall bar an owner from applying for or collecting any rent increases until such registration has occurred, except for those rent increases which were allowable before the failure to register. However, treble damages will not be imposed against an owner who collects a rent increase, but has not registered where the overcharge results solely because of such owner's failure to file a timely or proper initial or annual registration statement. Where the owner files a late registration statement, any rent increase collected prior to the late registration that would have been lawful except for the failure to timely and properly register will not be found to be an overcharge.

7.   **RENEWAL LEASES:**

A tenant has a right to a renewal lease, with certain exceptions (see section 11 of this Rider, "When An Owner May Refuse To Renew A Lease").

At least 90 days and not more than 150 days before the expiration of a lease, the owner is required to notify the tenant in writing that the lease will soon expire. That notice must also offer the tenant the choice of a 1 or 2 year lease at the permissible guidelines increase. After receiving the notice, the tenant always has 60 days to accept the owner's offer, whether or not the offer is made within the above time period, or even beyond the expiration of the lease term.

Any renewal lease, except for the amount of rent and duration of its term, is required to be on the same terms and conditions as the expired lease, and a fully executed copy of the same must be provided to the tenant within 30 days from the owner's receipt of the renewal lease or renewal form signed by the tenant. If the owner does not return a copy of such fully executed Renewal Lease Form to the tenant within 30 days of receiving the signed renewal lease from the tenant, the tenant is responsible for payment of the new lease rent and may file a *"Tenant's Complaint of Owner's Failure to Renew Lease and/or Failure to Furnish a Copy of a Signed Lease"* (DHCR Form RA-90). DHCR shall order the owner to furnish the copy of the renewal lease or form. If the owner does not comply within 20 days of such order, the owner shall not be entitled to collect a rent guidelines increase until the lease or form is provided.

If a tenant wishes to remain in occupancy beyond the expiration of the lease, the tenant may not refuse to sign a proper renewal lease. If the tenant does refuse to sign a proper renewal lease, he or she may be subject to an eviction proceeding.

An owner may add to a renewal lease the following clauses even if such clauses were not included in the tenant's prior lease:

(A)  the rent may be adjusted by the owner on the basis of Rent Guidelines Board or DHCR Orders;

(B)  if the owner or the lease grants permission to sublet or assign, the owner may charge a sublet vacancy allowance for a sub-tenant or assignee, provided the prime lease is a renewal lease. However, this sublet vacancy allowance may be charged even if such clause is not added to the renewal lease. (Subletting is discussed in section 10 of this Rider);

(C)  (1) if the building in which the apartment is located is receiving tax benefits pursuant to Section

The annual update to the initial registration must be filed with DHCR by July 31st with information as of April 1st of each year. At the time of such filing, the owner must provide each tenant with the tenant's copy. The rental amount registered annually is challengable by the filing with DHCR of a *"Tenant's Complaint of Rent Overcharge and/or Excess Security Deposit"* (DHCR Form RA-89), for a period of 4 years prior to the filing of the complaint. The rental history prior to this 4 year period will not be examined. Rent charged and paid on the date at the beginning of this 4 year period is the "base date rent."

(C)  **Penalties**

Failure to register shall bar an owner from applying for or collecting any rent increases until such registration has occurred, except for those rent increases which were allowable before the failure to register. However, treble damages will not be imposed against an owner who collects a rent increase, but has not registered where the overcharge results solely because of such owner's failure to file a timely or proper initial or annual registration statement. Where the owner files a late registration statement, any rent increase collected prior to the late registration that would have been lawful except for the failure to timely and properly register will not be found to be an overcharge.

7.  **RENEWAL LEASES**:

A tenant has a right to a renewal lease, with certain exceptions (see section 11 of this Rider, "When An Owner May Refuse To Renew A Lease").

At least 90 days and not more than 150 days before the expiration of a lease, the owner is required to notify the tenant in writing that the lease will soon expire. That notice must also offer the tenant the choice of a 1 or 2 year lease at the permissible guidelines increase. After receiving the notice, the tenant always has 60 days to accept the owner's offer, whether or not the offer is made within the above time period, or even beyond the expiration of the lease term.

Any renewal lease, except for the amount of rent and duration of its term, is required to be on the same terms and conditions as the expired lease, and a fully executed copy of the same must be provided to the tenant within 30 days from the owner's receipt of the renewal lease or renewal form signed by the tenant. If the owner does not return a copy of such fully executed Renewal Lease Form to the tenant within 30 days of receiving the signed renewal lease from the tenant, the tenant is responsible for payment of the new lease rent and may file a *"Tenant's Complaint of Owner's Failure to Renew Lease and/or Failure to Furnish a Copy of a Signed Lease"* (DHCR Form RA-90). DHCR shall order the owner to furnish the copy of the renewal lease or form. If the owner does not comply within 20 days of such order, the owner shall not be entitled to collect a rent guidelines increase until the lease or form is provided.

If a tenant wishes to remain in occupancy beyond the expiration of the lease, the tenant may not refuse to sign a proper renewal lease. If the tenant does refuse to sign a proper renewal lease, he or she may be subject to an eviction proceeding.

An owner may add to a renewal lease the following clauses even if such clauses were not included in the tenant's prior lease:

(A)  the rent may be adjusted by the owner on the basis of Rent Guidelines Board or DHCR Orders;

(B)  if the owner or the lease grants permission to sublet or assign, the owner may charge a sublet vacancy allowance for a sub-tenant or assignee, provided the prime lease is a renewal lease. However, this sublet vacancy allowance may be charged even if such clause is not added to the renewal lease. (Subletting is discussed in section 10 of this Rider);

(C)  (1) if the building in which the apartment is located is receiving tax benefits pursuant to Section 421-a of the Real Property Tax Law, a clause may be added providing for an annual or other periodic rent increase over the initial rent at an average rate of not more than 2.2 % of the amount of such initial rent per annum not to exceed nine, 2.2 percent increases. Such charge shall not become part of the legal regulated rent; however, the cumulative 2.2 percent increases charged prior to the termination of tax benefits may continue to be collected as a separate charge;

(2) provisions for rent increases if authorized under Section 423 of the Real Property Tax Law, a clause may be added to provide for an annual or other periodic rent increase over the legal regulated rent if authorized by Section 423 of the Real Property Tax Law;

(D)  if the Attorney General, pursuant to  Section 352-eeee of the General Business Law, has accepted for filing an Eviction Plan to convert the building to cooperative or condominium ownership, a clause may be added providing that the lease may be cancelled upon expiration of a 3 year period after the Plan is declared effective. (The owner must give the tenant at least 90 days notice that the 3 year period has expired or will be expiring.)

(E) if a proceeding based on an Owner's Petition for Decontrol ("OPD") is pending, a clause may be added providing that the lease will no longer be in effect as of 60 days from the issuance of a DHCR Decontrol Order, or if a Petition for Administrative Review ("PAR") is filed against such order, 60 days from the issuance of a DHCR order dismissing or denying the PAR, (see section 17 of this Rider, "Renewal Leases Offered During Pendency of High Income Deregulation Proceedings").

## 8.   RENEWAL LEASE SUCCESSION RIGHTS:

In the event that the tenant has permanently vacated the apartment at the time of the renewal lease offer, family members who have lived with the tenant in the apartment as a primary residence for at least two years immediately prior to such permanent vacating (one year for family members who are senior citizens and disabled persons), or from the inception of the tenancy or commencement of the relationship, if for less than such periods, are entitled to a renewal lease.

"Family Member" includes the husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law of the tenant.

"Family member" may also include any other person living with the tenant in the apartment as a primary residence who can prove emotional and financial commitment and interdependence between such person and the tenant. Examples of evidence which is considered in determining whether such emotional and financial commitment and interdependence existed are set forth in the Rent Stabilization Code. Renewal lease succession rights are also discussed in detail in DHCR Fact Sheet #30.

## 9.   SERVICES:

Except for complaints relating to heat, hot water, or other conditions requiring emergency repairs, prior written notification to the owner or managing agent of a service complaint is required. Application for a rent reduction may only be filed between 10 and 60 days after such notification, and a copy of the notification and proof of mailing and delivery must be attached to the application. Applications based on a lack of heat or hot water must be accompanied by a report from the appropriate city agency.

Certain conditions, examples of which are set forth in the Code, which have only a minimal impact on tenants, do not affect the use and enjoyment of the premises, and may exist despite regular maintenance of services. These conditions do not rise to the level of a failure to maintain required services. The passage of time during which a disputed service was not provided without complaint may be considered in determining whether a condition is de minimis. For this purpose, the passage of 4 years or more will be considered presumptive evidence that the condition is de minimis.

The amount of any rent reduction ordered by DHCR shall be reduced by any credit, abatement or offset in rent which the tenant has received pursuant to Sec. 235-b of the Real Property Law ("Warranty of Habitability") that relates to one or more conditions covered by the DHCR Order. For additional information see DHCR Fact Sheets #3 and 14.

## 10.   SUBLETTING AND ASSIGNMENT:

A tenant has the right to sublet his/her apartment, even if subletting is prohibited in the lease, provided that the tenant complies strictly with the provisions of Real Property Law Section 226-b. Tenants who do not comply with these requirements may be subject to eviction proceedings. Compliance with Section 226-b is not determined by DHCR, but by a court of competent jurisdiction. If a tenant in occupancy under a renewal lease sublets his/her apartment, the owner may charge the tenant, the sublet allowance provided by the NYC Rent Guidelines Board. This charge may be passed on to the sub-tenant. However, upon termination of the sublease, the Legal Regulated Rent shall revert to the Legal Regulated Rent without the sublet allowance. The rent increase is the allowance provided by the NYC Rent Guidelines Board available when the tenant's renewal lease commenced, and it takes effect when the subletting takes place. If a tenant in occupancy under a vacancy lease sublets, the owner is not entitled to any rent increase during the subletting.

A tenant who sublets his/her apartment is entitled to charge the sub-tenant the rent permitted under the Rent Stabilization Law, and may charge a 10% surcharge payable to the tenant only if the apartment sublet is fully furnished with the tenant's furniture. Where the tenant charges the sub-tenant any additional rent above such surcharge and sublet allowance, if applicable, the tenant shall be required to pay to the sub-tenant a penalty of three times the rent overcharge, and may also be required to pay interest and attorney's fees. The tenant may also be subject to an eviction proceeding.

**Assignment of Leases**

"Family Member" includes the husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law of the tenant.

"Family member" may also include any other person living with the tenant in the apartment as a primary residence who can prove emotional and financial commitment and interdependence between such person and the tenant. Examples of evidence which is considered in determining whether such emotional and financial commitment and interdependence existed are set forth in the Rent Stabilization Code. Renewal lease succession rights are also discussed in detail in DHCR Fact Sheet #30.

## 9.   SERVICES:

Except for complaints relating to heat, hot water, or other conditions requiring emergency repairs, prior written notification to the owner or managing agent of a service complaint is required. Application for a rent reduction may only be filed between 10 and 60 days after such notification, and a copy of the notification and proof of mailing and delivery must be attached to the application. Applications based on a lack of heat or hot water must be accompanied by a report from the appropriate city agency.

Certain conditions, examples of which are set forth in the Code, which have only a minimal impact on tenants, do not affect the use and enjoyment of the premises, and may exist despite regular maintenance of services. These conditions do not rise to the level of a failure to maintain required services. The passage of time during which a disputed service was not provided without complaint may be considered in determining whether a condition is de minimis. For this purpose, the passage of 4 years or more will be considered presumptive evidence that the condition is de minimis.

The amount of any rent reduction ordered by DHCR shall be reduced by any credit, abatement or offset in rent which the tenant has received pursuant to Sec. 235-b of the Real Property Law ("Warranty of Habitability") that relates to one or more conditions covered by the DHCR Order. For additional information see DHCR Fact Sheets #3 and 14.

## 10.   SUBLETTING AND ASSIGNMENT:

A tenant has the right to sublet his/her apartment, even if subletting is prohibited in the lease, provided that the tenant complies strictly with the provisions of Real Property Law Section 226-b. Tenants who do not comply with these requirements may be subject to eviction proceedings. Compliance with Section 226-b is not determined by DHCR, but by a court of competent jurisdiction. If a tenant in occupancy under a renewal lease sublets his/her apartment, the owner may charge the tenant, the sublet allowance provided by the NYC Rent Guidelines Board. This charge may be passed on to the sub-tenant. However, upon termination of the sublease, the Legal Regulated Rent shall revert to the Legal Regulated Rent without the sublet allowance. The rent increase is the allowance provided by the NYC Rent Guidelines Board available when the tenant's renewal lease commenced, and it takes effect when the subletting takes place. If a tenant in occupancy under a vacancy lease sublets, the owner is not entitled to any rent increase during the subletting.

A tenant who sublets his/her apartment is entitled to charge the sub-tenant the rent permitted under the Rent Stabilization Law, and may charge a 10% surcharge payable to the tenant only if the apartment sublet is fully furnished with the tenant's furniture. Where the tenant charges the sub-tenant any additional rent above such surcharge and sublet allowance, if applicable, the tenant shall be required to pay to the sub-tenant a penalty of three times the rent overcharge, and may also be required to pay interest and attorney's fees. The tenant may also be subject to an eviction proceeding.

### Assignment of Leases

In an assignment, a tenant transfers the entire remainder of his or her lease to another person (the assignee), and gives up all of his/her rights to reoccupy the apartment.

Pursuant to the provisions of Real Property Law Section 226-b, a tenant may not assign his/her lease without the written consent of the owner, unless the lease expressly provides otherwise. If the owner consents to the assignment of the lease, the owner may charge the assignee, as a vacancy allowance, the rent the owner could have charged had the renewal lease been a vacancy lease. Such vacancy allowance shall remain part of the Legal Regulated Rent for any subsequent renewal lease. The rent increase is the vacancy allowance available when the tenant's renewal lease commenced and it takes effect when the assignment takes place.

An owner is not required to have reasonable grounds to refuse to consent to the assignment. However, if the owner unreasonably refuses consent, the owner must release the tenant from the remainder of the lease, if the tenant, upon 30 days notice to the owner, requests to be released.

(A) the tenant refuses to sign a proper renewal lease offered by the owner;

(B) the owner seeks the apartment in good faith for personal use or for the personal use of members of the owner's immediate family;

(C) the building is owned by a hospital, convent, monastery, asylum, public institution, college, school, dormitory or any institution operated exclusively for charitable or educational purposes and the institution requires the apartment for residential or nonresidential use pursuant to its charitable or educational purposes: or

(D) the tenant does not occupy the apartment as his or her primary residence. The owner must notify the tenant in writing at least 90 and not more than 150 days prior to the expiration of the lease term of the owner's intention not to renew the lease.

**With DHCR consent**, the owner may refuse to renew a lease upon any of the following grounds:

(A) the owner seeks in good faith to recover possession of the apartment for the purpose of demolishing the building and constructing a new building; or

(B) the owner requires the apartment or the land for the owner's own use in connection with a business which the owner owns and operates.

A tenant will be served with a copy of the owner's application and has a right to object. If the owner's application is granted, the owner may bring an eviction action in Civil Court.

## 12.   EVICTION WHILE THE LEASE IS IN EFFECT:

The owner may bring an action in Civil Court to evict a tenant during the term of the lease because a tenant:

(A) does not pay rent;

(B) is violating a substantial obligation of the tenancy;

(C) is committing or permitting a nuisance;

(D) is illegally using or occupying the apartment;

(E) has unreasonably refused the owner access to the apartment for the purpose of making necessary repairs or improvements required by law or authorized by DHCR, or for the purpose of inspection or showing. The tenant must be given at least 5 days notice of any such inspection or showing, to be arranged at the mutual convenience of the tenant and owner, so to enable the tenant to be present at the inspection or showing. A tenant cannot be required to permit access for inspection or showing if such requirement would be contrary to the lease; or

(F) is occupying an apartment located in a cooperative or condominium pursuant to an Eviction Plan. (See subdivision (D) of section 7 of this Rider, "Renewal Leases".) A non-purchasing tenant pursuant to a Non-Eviction Plan may not be evicted, except on the grounds set forth in (A) - (E) above.

Tenants are cautioned that causing violations of health, safety, or sanitation standards of housing maintenance laws, or permitting such violations by a member of the family or of the household or by a guest, may be the basis for a court action by the owner.

## 13.   COOPERATIVE AND CONDOMINIUM CONVERSION:

Tenants who do not purchase their apartments under a Non-Eviction Conversion Plan continue to be protected by Rent Stabilization. Conversions are regulated by the New York State Attorney General. Any cooperative or condominium conversion plan accepted for filing by the New York State Attorney General's Office will include specific information about tenant rights and protections. An informational booklet about the general subject of conversion is available from the New York State Attorney General's Office.

A Senior Citizen or a Disabled Person in a building which is being converted to cooperative or condominium ownership pursuant to an Eviction Plan is eligible for exemption from the requirement to purchase his/her apartment to remain in occupancy. This exemption is available to Senior Citizens, or to Disabled Persons with impairments expected to be permanent, which prevent them from engaging in any substantial employment. A Conversion Plan accepted for filing by the New York State Attorney General's office must contain specific information regarding this exemption.



**14.   SENIOR CITIZENS AND DISABILITY RENT INCREASE EXEMPTION PROGRAM:**

Tenants or their spouses who are 62 years of age, or older, or are persons with a disability, and whose household income level does not exceed the established income level may qualify for an exemption from Guidelines rent increases, hardship rent increases, and major capital improvement rent increases. This exemption will only be for a portion of the increase which causes the tenant's rent to exceed one-third of the "net" household income, and is not available for in-creases based on new services or equipment within the apartment. Questions concerning the Senior Citizen Rent Increase Exemption program should be addressed to the New York City Department of the Aging. Questions concerning the Disability Rent Increase Exemption program should be addressed to the Mayor's Office for People with Disabilities.

When a senior citizen or person with a disability is granted a rent increase exemption, the owner may obtain a real estate tax credit from New York City equal to the amount of the tenant's exemption. Notwithstanding any of the above, a senior citizen or person with a disability who receives a rent increase exemption is still required to pay a full month's rent as a security deposit.  For additional information see DHCR Fact Sheet #21.

**15.   SPECIAL CASES AND EXCEPTIONS:**

Some special rules relating to stabilized rents and required services may apply to newly constructed buildings which receive tax abatement or exemption, and to buildings rehabilitated under certain New York City, New York State, or federal financing or mortgage insurance programs. The rules mentioned in this Rider do not necessarily apply to rent stabilized apartments located in hotels. A separate Hotel Rights Notice informing permanent hotel tenants and owners of their basic rights and responsibilities under the Rent Stabilization Law is available from DHCR.

**16.   HIGH INCOME RENT DEREGULATION:**

Upon the issuance of an Order by DHCR, apartments which: (1) are occupied by persons who have a total annual income in excess of $175,000 per annum for each of the two preceding calendar years and (2) have a legal regulated rent of $2,000 or more per month, shall no longer be subject to rent regulation ("High Income Rent Deregulation"). The Rent Stabilization Law permits an owner to file a Petition for High Income Rent Deregula-tion on an annual basis. As part of the process, the tenant will be required to identify all persons who occupy the apartment as their primary residence on other than a temporary basis, excluding bona fide employees of the tenant(s) and sub-tenants, and certify whether the total annual income was in excess of $175,000 in each of the two preceding calendar years. If the tenant fails to provide the requested information to DHCR, an order of de-regulation will be issued. If the tenant provides the requested information and certifies that the total annual in-come was not in excess of $175,000, the NYS Department of Taxation and Finance will review whether the apartment is occupied by persons who have a total annual income in excess of $175,000 in each of the two preceding calendar years.

**17.   RENEWAL LEASES OFFERED DURING PENDENCY OF HIGH INCOME DEREGULATION PROCEED-INGS:**

Where a High Income Deregulation Proceeding is pending before DHCR and the owner is required to offer a renewal lease to the tenant, a separate rider may be attached to and served with the Rent Stabilization Law "Renewal Lease Form" (RTP-8). If so attached and served, it shall become part of and modify the Notice and Renewal Lease. The text of the rider is set forth below and may not be modified or altered without approval of DHCR.

**NOTICE TO TENANT:**

Pursuant to Section 5-a of the Emergency Tenant Protection Act, or Section 26-504.3 of the Rent Stabiliza-tion Law, the owner has commenced a proceeding before DHCR for deregulation of your apartment by filing a Petition by Owner for High Income Rent Deregulation on _____, 20_____.
(Date)

That proceeding is now pending before DHCR. If DHCR grants the petition for deregulation, this renewal lease shall be cancelled and shall terminate after 60 days from the date of issuance of an order granting such petition. In the event that you file a Petition for Administrative Review (PAR) the order of deregulation, or if you have already filed such PAR and it is pending before DHCR at the time you receive this Notice, and the PAR is subsequently dismissed or denied, this renewal lease shall be cancelled and shall terminate after 60 days from the issuance by DHCR of an order dismissing or denying the PAR.

Upon such termination of this renewal lease, the liability of the parties for the further performance of the terms, covenants and conditions of this renewal lease shall immediately cease.

estate tax credit from New York City equal to the amount of the tenant's exemption. Notwithstanding any of the above, a senior citizen or person with a disability who receives a rent increase exemption is still required to pay a full month's rent as a security deposit. For additional information see DHCR Fact Sheet #21.

## 15.   SPECIAL CASES AND EXCEPTIONS:

Some special rules relating to stabilized rents and required services may apply to newly constructed buildings which receive tax abatement or exemption, and to buildings rehabilitated under certain New York City, New York State, or federal financing or mortgage insurance programs. The rules mentioned in this Rider do not necessarily apply to rent stabilized apartments located in hotels. A separate Hotel Rights Notice informing permanent hotel tenants and owners of their basic rights and responsibilities under the Rent Stabilization Law is available from DHCR.

## 16.   HIGH INCOME RENT DEREGULATION:

Upon the issuance of an Order by DHCR, apartments which: (1) are occupied by persons who have a total annual income in excess of $175,000 per annum for each of the two preceding calendar years and (2) have a legal regulated rent of $2,000 or more per month, shall no longer be subject to rent regulation ("High Income Rent Deregulation"). The Rent Stabilization Law permits an owner to file a Petition for High Income Rent Deregulation on an annual basis. As part of the process, the tenant will be required to identify all persons who occupy the apartment as their primary residence on other than a temporary basis, excluding bona fide employees of the tenant(s) and sub-tenants, and certify whether the total annual income was in excess of $175,000 in each of the two preceding calendar years. If the tenant fails to provide the requested information to DHCR, an order of deregulation will be issued. If the tenant provides the requested information and certifies that the total annual income was not in excess of $175,000, the NYS Department of Taxation and Finance will review whether the apartment is occupied by persons who have a total annual income in excess of $175,000 in each of the two preceding calendar years.

## 17.   RENEWAL LEASES OFFERED DURING PENDENCY OF HIGH INCOME DEREGULATION PROCEED-INGS:

Where a High Income Deregulation Proceeding is pending before DHCR and the owner is required to offer a renewal lease to the tenant, a separate rider may be attached to and served with the Rent Stabilization Law "Renewal Lease Form" (RTP-8). If so attached and served, it shall become part of and modify the Notice and Renewal Lease. The text of the rider is set forth below and may not be modified or altered without approval of DHCR.

## NOTICE TO TENANT:

Pursuant to Section 5-a of the Emergency Tenant Protection Act, or Section 26-504.3 of the Rent Stabilization Law, the owner has commenced a proceeding before DHCR for deregulation of your apartment by filing a Petition by Owner for High Income Rent Deregulation on _____, 20_____.

(Date)

That proceeding is now pending before DHCR. If DHCR grants the petition for deregulation, this renewal lease shall be cancelled and shall terminate after 60 days from the date of issuance of an order granting such petition. In the event that you file a Petition for Administrative Review (PAR) the order of deregulation, or if you have already filed such PAR and it is pending before DHCR at the time you receive this Notice, and the PAR is subsequently dismissed or denied, this renewal lease shall be cancelled and shall terminate after 60 days from the issuance by DHCR of an order dismissing or denying the PAR.

Upon such termination of this renewal lease, the liability of the parties for the further performance of the terms, covenants and conditions of this renewal lease shall immediately cease.

# Appendix

## Some agencies which can provide assistance

New York State Division of Housing and Community Renewal (DHCR)

DHCR is a State agency empowered to administer and enforce the Rent Stabilization Law and the Rent Control Law. Tenants should contact DHCR Public Information Offices listed below for assistance.

**Queens**
92-31 Union Hall Street
Jamaica, NY 11433
(718) 739-6400

**Lower Manhattan** (South side of 110th Street and below)
25 Beaver Street
New York, NY 10004
(212) 480-6700

**Upper Manhattan** (North side of 110th Street and above)
163 West 125th Street
New York, NY 10027
(212) 961-8930

**Bronx**
1 Fordham Plaza,
Bronx, NY 10458
(718) 563-5678

**Brooklyn**
55 Hanson Place, 7th Floor
Brooklyn, NY 11217
(718) 722-4778

**Staten Island**
60 Bay Street, 7th Floor
Staten Island, NY 10301
(718) 816-0277

Attorney General of the State of New York
120 Broadway, New York, NY 10271

Consumer Frauds and Protection Bureau - (212) 416-8345

- investigates and enjoins illegal or fraudulent business practices, including the overcharging of rent and mishandling of rent security deposits by owners.

Real Estate Financing Bureau - (212) 416-8121

- administers and enforces the laws governing cooperative and condominium conversions. Investigates complaints from tenants in buildings undergoing cooperative or condominium conversion concerning allegations of improper disclosure, harassment, and misleading information.

New York City Department of Housing Preservation and Development (HPD):

Division of Code Enforcement
*Principal Office*
100 Gold Street, New York, N.Y. 10038 - (212) 863-8000

- enforcement of housing maintenance standards.

New York City Central Complaint Bureau
215 West 125th Street, New York, N.Y. 10038   (212) 824-4328

- receives telephone complaints relating to physical maintenance, health, safety and sanitation standards, including emergency heat and hot water service. This service is available 24 hours per day. However, complaints as to emergency heat service are received only between October 1st and May 31st of each year.

New York City Rent Guidelines Board (RGB):
51 Chambers Street, Room 202, New York, N.Y. 10007 - (212) 385-2934

- promulgates annual percentage of rent increases for rent stabilized apartments and provides information on guidelines orders.

New York City Department for the Aging

SCRIE Division
2 Lafayette Street, 6th Floor, New York, New York, 10007 - (212) 442-1000

(718) 739-6400                                                          (718) 563-5678

**Lower Manhattan** (South side of 110th Street and below)          **Brooklyn**
25 Beaver Street                                                    55 Hanson Place, 7th Floor
New York, NY 10004                                                  Brooklyn, NY 11217
(212) 480-6700                                                      (718) 722-4778

**Upper Manhattan** (North side of 110th Street and above)          **Staten Island**
163 West 125th Street                                               60 Bay Street, 7th Floor
New York, NY 10027                                                  Staten Island, NY 10301
(212) 961-8930                                                      (718) 816-0277

Attorney General of the State of New York
120 Broadway, New York, NY 10271

> Consumer Frauds and Protection Bureau - (212) 416-8345
>
> - investigates and enjoins illegal or fraudulent business practices, including the overcharging of rent and mishandling of rent security deposits by owners.
>
> Real Estate Financing Bureau - (212) 416-8121
>
> - administers and enforces the laws governing cooperative and condominium conversions. Investigates complaints from tenants in buildings undergoing cooperative or condominium conversion concerning allegations of improper disclosure, harassment, and misleading information.

New York City Department of Housing Preservation and Development (HPD):

> Division of Code Enforcement
> Principal Office
> 100 Gold Street, New York, N.Y.  10038 - (212) 863-8000
>
> - enforcement of housing maintenance standards.
>
> New York City Central Complaint Bureau
> 215 West 125th Street, New York, N.Y.  10038   (212) 824-4328
>
> - receives telephone complaints relating to physical maintenance, health, safety and sanitation standards, including emergency heat and hot water service. This service is available 24 hours per day. However, complaints as to emergency heat service are received only between October 1st and May 31st of each year.

New York City Rent Guidelines Board (RGB):
51 Chambers Street, Room 202, New York, N.Y. 10007 - (212) 385-2934

> - promulgates annual percentage of rent increases for rent stabilized apartments and provides information on guidelines orders.

New York City Department for the Aging

> SCRIE Division
> 2 Lafayette Street, 6th Floor, New York, New York, 10007 - (212) 442-1000
>
> - administers the Senior Citizen Rent Increase Exemption program.

Mayor's Office for People with Disabilities

> - 100 Gold Street, 2nd Floor, New York, NY 10038- Tel: 212-788-2830


Copies of New York State and New York City rent laws are available in the business section of some public libraries. A person should call or write to a public library to determine the exact library which has such legal material.

APPENDIX A



# WINDOW GUARDS REQUIRED
## Lease Notice to Tenant

**THE CITY OF NEW YORK**
DEPARTMENT OF HEALTH
AND MENTAL HYGIENE

Michael R. Bloomberg   Thomas R. Frieden, MD, MPH
Mayor            Commissioner

*You are required by law to have window guards installed in all windows
if a child 10 years of age or younger lives in your apartment.*

*Your landlord is required by law to install window guards in your apartment:*
   if a child 10 years of age or younger lives in your apartment,
                    OR
   if you ask him to install window guards at any time (you need not give a reason).

*It is a violation of law to refuse, interfere with installation, or remove window guards where required.*

**CHECK ONE**

☐ CHILDREN 10 YEARS OF AGE OR
YOUNGER LIVE IN MY APARTMENT

☑ NO CHILDREN 10 YEARS OF AGE OR
YOUNGER LIVE IN MY APARTMENT

☐ I WANT WINDOW GUARDS EVEN THOUGH
I HAVE NO CHILDREN 10 YEARS OF AGE
OR YOUNGER

*Angela Pauli*
Tenant (Print)

*Angela Pauli*
Tenant's Signature: _____     _____
                                            Date

*1576   3 AVE*                              *3A*
Tenant's Address                            Apt No.

**RETURN THIS FORM TO:**

Owner/Manager

Owner/Manager's Address

*For Further Information Call:*
*Window Falls Prevention (212) 676-2162*

WF-013 (Rev. 11/02)

## LEASE/COMMENCEMENT OF OCCUPANCY NOTICE FOR PREVENTION OF LEAD-BASED PAINT HAZARDS–INQUIRY REGARDING CHILD

You are required by law to inform the owner if a child under seven years of age resides or will reside in the dwelling unit (apartment) for which you are signing this lease/commencing occupancy. If such a child resides or will reside in the unit, the owner of the building is required to perform an annual visual inspection of the unit to determine the presence of lead-based paint hazards. **IT IS IMPORTANT THAT YOU RETURN THIS FORM TO THE OWNER OR MANAGING AGENT OF YOUR BUILDING TO PROTECT THE HEALTH OF YOUR CHILD.**

If you do not respond to this notice, the owner is required to attempt to inspect your apartment to determine if a child under seven years of age resides there. If a child under seven years of age does not reside in the unit now, but does come to live in it at any time during the year, you must inform the owner in writing immediately. If a child under seven years of age resides in the unit, you should also inform the owner immediately at the address below if you notice any peeling paint or deteriorated subsurfaces in the unit during the year.

Please complete this form and return one copy to the owner or his or her agent or representative when you sign the lease/commence occupancy of the unit. Keep one copy of this form for your records. You should also receive a copy of a pamphlet developed by the New York City Department of Health and Mental Hygiene explaining about lead-based paint hazards when you sign your lease/commence occupancy.

**CHECK ONE:** ☐ A child under seven years of age resides in the unit.

☑ A child under seven years of age does not reside in the unit.

x _Angela Pauli_____ (Occupant signature)

Print occupant's name, address and apartment number: x _Angela Pauli_____

_1576 3 AVE  # 3A_____

---

(NOT APPLICABLE TO RENEWAL LEASE) Certification by owner: I certify that I have complied with the provisions of §27-2056.8 of Article 14 of the Housing Maintenance Code and the rules promulgated thereunder relating to duties to be performed in vacant units, and that I have provided a copy of the New York City Department of Health and Mental Hygiene pamphlet concerning lead-based paint hazards to the occupant.

_____ (Owner signature)

RETURN THIS FORM TO: _ERS·MSD Cor-_
_7028 13th in CY. 10457_

OCCUPANT: KEEP ONE COPY FOR YOUR RECORDS
OWNER COPY/OCCUPANT COPY

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**
*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

　(i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

　　_____

　　_____

　(ii) _____ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor  (check (i) or (ii) below):

　(i) _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

　　_____

　　_____

　(ii) _____ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (Initial)**

(c) _x̲A̲P̲_ Lessee has received copies of all information listed above.

(d) _x̲A̲P̲_ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (Initial)**

(e) _S̲D̲_ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| *Sobin Dell* | | | |
| Lessor | Date | Lessor | Date |
| x Angela Pauls | x 11/12/09 | | |
| Lessee | Date | Lessee | Date |
| Agent | Date | Agent | Date |

Owner
Property Name
Owner Address
City, State, Zip Code

Current Occupant
Apartment Number
Property Address
City, State, Zip Code

Keep the top part of this form for your reco

## Annual Notice to Tenant or Occupant in Buildings with 3 or More Apartments
## Protect Your Child from Window Falls and Lead Poisoning

You are required by law to complete and return this form to your landlord before February 15 each year. If you do not return the form, your landlord is required to visit your apartment to find out the ages of children living with you. Call 311 for more information on preventing window falls and lead poisoning.

### Window Guards

- Your landlord is required by law to install window guards in all your windows if a child age 10 years or younger lives with you, or if you ask for them (even if no children live with you). However, windows that open to fire escapes and windows on the first floor used as fire exits should not have window guards.
- Window Guards should be installed so there is no space greater than 4 ½ inches above or below the guard, on the side of the guard, or between the bars.
- It is against the law for you to refuse, interfere with installation, or remove window guards where they are required.

The above requirements apply to all buildings with 3 or more apartments regardless of when they were built.

### Peeling Lead Paint

- Your landlord is required by law to inspect your apartment for peeling paint and other lead paint hazards at least once a year if a child age 6 years or younger lives with you.
- Always report peeling paint to your landlord. If a child age 6 years or younger lives with you, your landlord must inspect your apartment. Your landlord must provide you with the results of these paint inspections.
- Your landlord must use safe work practices to repair all peeling paint and other lead paint hazards.
- If you have a baby or if a child age 6 years or younger comes to live with you during the year, you must notify your landlord in writing.

The above requirements apply to buildings with 3 or more apartments built before 1960, or built between 1960 and 1978 if the landlord knows that lead paint is present in the building.

## Fill Out and Detach the bottom part of this form and return in envelope.

Please check YES or NO:

| | YES | NO |
|---|---|---|
| 1. A child age 10 years or younger lives in my apartment: | ☐ YES | ☒ NO |
| IF NO: I want window guards even though no children age 10 years or younger live in my apartment: | ☐ YES | ☒ NO |
| IF YES: A child age 6 years or younger lives in my apartment: | ☐ YES | ☒ NO |
| 2. Window guards are installed in all windows as required: | ☐ YES | ☒ NO |
| 3. Window guards need maintenance or repair: | ☐ YES | ☐ NO |

Current Occupant
Apartment Number
Address
City, State, Zip Code

Return to:

Owner
Property Name
Address of Owner
City, State, Zip Code

Name of Tenant/Occupant (Print): X Angela Pauli
Tenant/Occupant Signature: X Angila Pauli
Date:  X 11/12/09